(94 P.3d 729)

No. 91,637

The Cincinnati Life Insurance Company, An Ohio Corporation, *Plaintiff*, v. Judith A. Palmer, *Defendant/Appellee/Cross-appellant*, and Natalie K. (Palmer) Shanklin, *Defendant/Appellant/Cross-appellee*.

Opinion filed July 30, 2004.

*Joseph N. Robb*, of Somers, Robb and Robb, of Newton, for appellant/cross-appellee.

*Randall E. Fisher*, of Law Office of Randall E. Fisher, of Newton, for appellee/cross-appellant.

Before GREENE, P.J., PIERRON and McANANY, JJ.

GREENE, J.: This appeal arises from an interpleader action filed by Cincinnati Life Insurance Company (CinLife), which requested the court to determine who is entitled to the proceeds of an insurance policy on the life of Terry R. Palmer. Terry's ex-wife and primary beneficiary, Natalie K. Palmer Shanklin, appeals from the district court's order awarding the proceeds to Terry's mother and contingent beneficiary, Judith A. Palmer. Natalie argues that the district court erred in interpreting the divorce decree as divesting her rights as primary beneficiary of the policy proceeds. Judith cross-appeals and argues that if intent is an issue, the district court erred in refusing to consider an affidavit addressing the intent of Terry. We reverse the district court, and we reject the cross-appeal.

*Factual and Procedural Background*

CinLife issued a whole life insurance policy to Terry in 1989; Natalie was named primary beneficiary, and Judith was named contingent beneficiary. In 1999, Terry and Natalie were divorced, and the divorce decree adopted a property settlement agreement of the parties and provided in material part:

"Q. Respondent [Terry] shall be awarded as his sole and separate property, free and clear of any claim of petitioner, any and all personal property currently in his possession including, but not expressly limited to, the following items:

1996 GMC pickup truck
John Deere mower
Above-ground swimming pool
Deck
Household items and personal items in his possession.
. . . .

"T. Each of the parties shall retain his or her own life insurance policies.

"U. Each of the parties hereto shall execute such instruments of conveyance as are necessary to effectuate the orders of this Court; and in the event that either of said parties neglects or fails to execute or deliver such instruments, then this decree shall operate as a transfer of title to said property and shall operate in lieu of such instrument of conveyance."

In December 2002, Terry died following an electrocution accident, and his life insurance policy at his death still identified the beneficiaries as they had been designated prior to the divorce. When both Natalie and Judith made demand upon CinLife for proceeds, this interpleader followed.

Both Natalie and Judith filed motions for summary judgment, alleging that no genuine issue of material fact precluded judgment as a matter of law. In response to Natalie's motion, however, Judith filed the affidavit of an insurance agent, averring that Terry had a conversation with the agent a few months before his death. The affidavit states in material part:

"Because he had told me about the divorce, I asked him what the status was of his ex-wife as the beneficiary of this life insurance. He advised me as a part of the divorce there was a property settlement agreement that gave that life insurance policy to him free from any claims by her. He also told me that his wife had been removed as the beneficiary according to his understanding of the property settlement agreement and that his mother, Judith A. Palmer, was the beneficiary under the policy. He told me that it was his understanding that the property settlement agreement had accomplished this goal and that he did not have to take any other action to have her removed as a beneficiary and his mother elevated to the primary (and sole) beneficiary on the Cincinnati Life Insurance policy."

The district judge sustained a relevance objection to the affidavit but granted summary judgment to Judith, reasoning in part:

"In applying the facts of the instant case to the circumstances in *Hollaway* [*v. Selvidge*, 219 Kan. 345, 548 P.2d 835 (1976)], I find that defendant Shanklin's rights as a beneficiary were terminated by the property settlement agreement incorporated into the journal entry of judgment and decree of divorce.

.  .  .  .

"[T]he rights of a beneficiary to the proceeds of an insurance policy upon the life of a divorced spouse may be terminated by an agreement of the parties which may be reasonably construed as a relinquishment of the spouse's rights to the insurance. . . . I find that in the context of the entire document, there is a clear intention to divide and resolve all property issues which existed between the parties at the time of the divorce. Each party was awarded property, free and clear

of any claim by the other. . . . [T]he intention of both parties was to fully divest each other of any claims on each other's property.

. . . .

". . . The language in the journal entry and decree of divorce/property settlement agreement falls within the exception to the general rule that the divorce, in and of itself, does not effect a change in beneficiary."

Natalie appeals, and Judith cross-appeals urging consideration of the affidavit if intent becomes an issue.

*Standard of Review*

On appeal of a summary judgment, we apply the same well-known standards of review as are applicable in the district court. *Bracken v. Dixon Industries, Inc.,* 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002). Interpretation and application of a statute such as K.S.A. 60-1610 is a question of law, and our review is unlimited. See *Williamson v. City of Hays,* 275 Kan. 300, 305, 64 P.3d 364 (2003).

*Did the District Court Err in Construing the Divorce Decree?*

Among Natalie's arguments on appeal is that the district court failed to recognize the effect of K.S.A. 60-1610(b)(1) in construing the divorce decree. This statutory subsection was amended in 1996 to add, in part, the following language:

"The decree shall provide for any changes in beneficiary designation on: (A) Any insurance or annuity policy that is owned by the parties, or in the case of group life insurance policies, under which either of the parties is a covered person; . . . Nothing in this section shall relieve the parties of the obligation to effectuate any change in beneficiary designation by the filing of such change with the insurer or issuer in accordance with the terms of such policy." L. 1996, ch. 186, sec. 2.

Judith argues that the decree complied with this statutory requirement in providing that "[e]ach of the parties shall retain his or her own life insurance policies." We disagree that this language was sufficient to comply with the statute, primarily because it fails to address beneficiary designation but also because of the legal distinction between policy ownership and the inchoate rights of a spousal beneficiary. See 2 Couch on Insurance 3d § 34:10, p. 34-11 (1995) (the act of assigning a life policy does not in itself effect any change in beneficiary). Moreover, if merely stating who will

retain ownership of the policy was sufficient to terminate inchoate spousal beneficiary rights, there was no need for the 1996 statutory revision, and we decline to assume that the legislative revision was meaningless. See *Ward v. Ward,* 272 Kan. 12, 20, 30 P.3d 1001 (2001).

Judith also argues, and the district court held, that this case is controlled by *Hollaway v. Selvidge,* 219 Kan. 345, 548 P.2d 835 (1976). We agree that *Hollaway* embraces general rules of law that remain vital and relevant to this appeal, but *Hollaway* was decided long prior to the 1996 statutory revision to K.S.A. 60-1610(b)(1), and we conclude that it is not controlling here. Significantly, *Hollaway* recognized:

"In the absence of terms in an ordinary life insurance policy that the rights of the beneficiary are conditioned upon the continuance of the marriage relation then existing between the beneficiary and the insured, or the regulation of the matter by statute, the general rule is that the rights of the beneficiary are in no way affected by the fact the parties are divorced subsequent to the issuance of the policy, especially if no attempt is made to change the beneficiary and the insured continues to keep up the payments on the policy. . . .

"[I]t is well settled that as part of a separation or property settlement agreement a wife may, upon divorce, contract away her right to claim insurance proceeds from policies on her husband's life in which she is named as the beneficiary." 219 Kan. at 348.

After embracing these general rules, the court in *Hollaway* proceeded to construe the terms of the property settlement agreement to ascertain the intent of the parties. 219 Kan. at 349-51. The district court followed *Hollaway* and embarked on precisely such an analysis here, reciting only that it "reviewed and considered the effect, if any, of K.S.A. 60-1610(b)(1)," but addressing no impact of the statute on the analysis. We conclude, however, that the *Hollaway* analysis, which focuses on the intent of the parties as expressed in the settlement agreement to determine whether spousal inchoate rights to beneficiary status have been relinquished, is no longer appropriate or necessary given the 1996 statutory revision.

We construe the 1996 statutory revision as requiring *any* change in beneficiary on any insurance or annuity policy to be specified in the divorce decree, and absent such an express provision in the decree, an active beneficiary designation of either spouse at the

time of the divorce is not changed. Just as the decree *"shall* divide the real and personal property of the parties," the decree shall provide for any changes in beneficiary designation on any insurance policy owned by the parties. Moreover, there remains no necessity to ascertain the intent of the parties as to any related property settlement agreement, since the legislature has required the *decree* itself to specify such changes, thereby rendering immaterial any purported but unspecified intention of the parties to the contrary.

The practical result of our construction of the legislative revision may seem harsh in this case, but it serves to avoid difficult and protracted proceedings to ascertain intent of the parties, often where one of the parties is deceased. As noted by one court:

"It is a simple matter to change a beneficiary on a policy after divorce, just as it is a simple matter to include an explicit waiver or relinquishment of the right of the beneficiary to take under the policy when the decree is drawn. Absent unequivocal language or actions to support a finding of relinquishment or waiver by [the ex-wife], we decline to speculate as to what the parties may have intended." *Redd v. Brooke*, 96 Nev. 9, 11, 604 P.2d 360 (1980).

We also note that our construction is consistent with authoritative practice manuals in Kansas:

"Kansas law indicates that absent a divorce decree mandating otherwise, the beneficiary designation on an insurance policy will control even if that person is the former spouse. Therefore, unless required by a separation agreement or court decree to retain an ex-spouse as a beneficiary, the client should change the beneficiary on all insurance policies to reflect the client's new intended recipient. The rights of an ex-spouse named as beneficiary may be terminated by an agreement of the parties that can be construed as a relinquishment or waiver of the spouse's rights in the life insurance policy. *K.S.A. 1998 Supp. 60-1610(b)(1) requires the decree to provide for any changes of beneficiary designation on insurance."* (Emphasis added.) 1 Elrod and Buchele, Kansas Law and Practice, Kansas Family Law § 9.57(4) (1999).

We conclude that the district court erred in construing the divorce decree absent appropriate application of the statutory requirement for all changes in beneficiary designations to be specified in the decree. Since the decree failed to provide for any change in the beneficiary designation of Terry's then spouse Natalie, she was entitled to the proceeds of the policy in question as a matter of law.

With regard to Judith's cross-appeal, our construction of the statutory revision to K.S.A. 60-1610(b)(1) has rendered immaterial any inquiry as to the parties' intention. There was no need to consider the affidavit, and the district court correctly sustained an objection to its relevancy. We reject Judith's argument on cross-appeal and affirm the district court on this issue.

Affirmed in part, reversed in part, and remanded with directions to enter judgment for appellant.